UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATHAN PHILLIPS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:15-cv-00151-JMS-MPB |
| ) | |
| JULIAN C. WILKERSON, ) | |
| CITY OF INDIANAPOLIS, ) | |
| ) | |
| *Defendants*. ) | |

### ORDER

Presently pending before the Court is Defendants City of Indianapolis' and Indianapolis Metropolitan Police Department ("IMPD") Detective Julian C. Wilkerson's (collectively "Defendants") Motion for Summary Judgment, [Filing No. 53], on all of Plaintiff Nathan Phillips' Fourth Amendment claims, [Filing No. 30]. Mr. Phillips opposes Defendants' motion. [Filing No. 62.] For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment. [Filing No. 53.]

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that

they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### RELEVANT BACKGROUND

The following statement of facts was evaluated pursuant to the standards set forth above. That is, the facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Phillips as the non-moving party, drawing all reasonable inferences in his favor. *See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000). The Court will therefore credit Mr. Phillips' version of the facts, as it is required to do.

### A. The Parties

Mr. Phillips is employed as a Deputy Jailer at the Hendricks County Sheriff's Department in Indiana, and at the time of the events relevant to this lawsuit, resided in Plainfield, Indiana. [Filing No. 63-4 at 2.] Detective Wilkerson has been a police officer with IMPD since 2001. [Filing No. 55-3 at 2.] He is a patrolman and a detective with the Citywide vice unit. [Filing No. 55-3 at 2.]

### B. Mr. Phillips' Version of Events

On February 1, 2014 around 11:00 p.m., Mr. Phillips' friends, Kyle Noel, Nicholas Passwater, and Antonio Hernandez, visited Mr. Phillips' apartment with plans to go out in downtown Indianapolis that evening. [Filing No. 63-4 at 3.] Prior to leaving, Mr. Phillips took two shots of Fireball whiskey. [Filing No. 63-3 at 4.] When Mr. Phillips and his friends arrived downtown, they visited Bartini's, which is a "nightclub/bar" located on South Meridian Street, and

3

stayed there until approximately 1:30 a.m. [Filing No. 55-1 at 53; Filing No. 63-2 at 2; Filing No. 63-3 at 4; Filing No. 63-4 at 3.] Mr. Phillips did not consume any alcohol at Bartini's. [Filing No. 55-1 at 53; Filing No. 63-2 at 2; Filing No. 63-3 at 4; Filing No. 63-4 at 3.] Around 1:45 a.m., Mr. Phillips and his friends visited a Mexican restaurant located a few blocks away from Bartini's, and while there, Mr. Phillips drank two beers. [Filing No. 63-3 at 7.] The Fireball shots had completely "worn off" and Mr. Phillips was not drunk or intoxicated from having consumed two beers. [Filing No. 63-4 at 3.] After they left the Mexican restaurant around 2:30 a.m., they attempted to re-enter Bartini's through the north entrance because Mr. Hernandez left an article of clothing inside. [Filing No. 63-3 at 8; Filing No. 63-4 at 4.] After being denied entry, they all walked down to Bartini's south entrance and Mr. Hernandez and Mr. Passwater attempted to re-enter while Mr. Phillips and Mr. Noel waited on the sidewalk. [Filing No. 63-3 at 9; Filing No. 63-4 at 4.]

The south entrance of Bartini's is elevated from the street. [Filing No. 63-2 at 3-9.] It has steps facing south that go up to the entrance and a ramp that faces north and goes up to the entrance. [Filing No. 63-2 at 3-9.] The top of the ramp is separated from the entrance by a railing. [Filing No. 63-2 at 3-9.] Mr. Phillips observed Mr. Hernandez being escorted out of Bartini's south entrance by Officer Cook, an off-duty uniformed officer working as security at Bartini's. [Filing No. 55-1 at 85-86; Filing No. 63-3 at 26.] A physical altercation between Mr. Hernandez and Officer Cook ensued, and Mr. Phillips walked up the ramp and told Mr. Hernandez to "stop resisting" and to "go down." [Filing No. 63-4 at 4.] "[T]he closest [Mr. Phillips] got to the railing . . . was two or three feet," and he could not reach Mr. Cook or Mr. Hernandez. [Filing No. 63-4 at 4-5.] Mr. Passwater followed Mr. Phillips up the ramp, stood next to him, and attempted to record the incident with his cell phone, but Mr. Phillips held out his left arm to motion Mr.

4

Passwater to stop recording. [Filing No. 63-4 at 4-5.] Neither Mr. Phillips' hands nor any other body parts were reaching out in front of him. [Filing No. 63-4 at 5.]

At that moment, Detective Wilkerson grabbed Mr. Phillips from behind without announcing his presence as a police officer. When Mr. Phillips attempted to turn his head to find out who grabbed him, Detective Wilkerson slammed his face against the wall and grabbed his throat with his right hand, choking him. [Filing No. 63-4 at 5.] At that moment, Mr. Phillips realized Detective Wilkerson was a police officer and he attempted to reassure Detective Wilkerson that he was not resisting, but Detective Wilkerson immediately slammed him into the ground. [Filing No. 63-3 at 16-17; Filing No. 63-4 at 5.] Detective Wilkerson placed his knee on the right side of Mr. Phillips' face, applied pressure, and pressed his face against the pavement. [Filing No. 63-3 at 17; Filing No. 63-4 at 6.] Detective Wilkerson placed him in handcuffs, and another officer came over and pressed his knee on Mr. Phillips' back. [Filing No. 63-3 at 17; Filing No. 63-4 at 6.]

Mr. Phillips was picked up off the ground and taken across the street, and when he realized he was bleeding profusely from his face, he was taken to an emergency medical technician. [Filing No. 63-4 at 6.] Mr. Phillips experienced "significant cuts and bruises to the left side of [his] face from Detective Wilkerson slamming him into the wall and ground and pressing the left side of [his] face into the pavement." [Filing No. 63-2 at 15; Filing No. 63-4 at 6.]

**C. Detective Wilkerson's Version of Events**

Detective Wilkerson tells a different story. Detective Wilkerson alleges that on February 2, 2016, he was assigned to work the south side of downtown Indianapolis, and that he had his cruiser parked across the street from Bartini's. [Filing No. 55-1 at 48-50.] He claims that in the early morning hours, he saw a fight take place outside of Bartini's, and that he ran across the street

5

to investigate and assist. [Filing No. 55-1 at 86-87.] Detective Wilkerson claims that he identified one of the people in the physical altercation as Officer Cook. [Filing No. 55-1 at 85-86.] He alleges that while Officer Cook was struggling with Mr. Hernandez, he observed Mr. Phillips approach them from behind, yelling and stretching out at least one arm. [Filing No. 55-2 at 30; Filing No. 55-2 at 33.] Detective Wilkerson claims that in that split-second, he decided to apply a brachial plexus stun on Mr. Phillips.[1] [Filing No. 55-1 at 111-13.] Detective Wilkerson alleges that after this technique failed, he saw Mr. Phillips "spinning around" and assumed Mr. Phillips was attempting to "square up on [him]." [Filing No. 55-1 at 111.] According to Detective Wilkerson, he grabbed Mr. Phillips by his upper torso and took him to the ground, which he alleges caused him to fall with Mr. Phillips. [Filing No. 55-1 at 117-18.] Detective Wilkerson claims that he placed his knee on Mr. Phillips' back until Mr. Phillips was handcuffed. [Filing No. 55-1 at 136-37.]

Detective Wilkerson claims that when he took Mr. Phillips across the street, he noticed Mr. Phillips had a cut on his temple and that as standard procedure, he had a paramedic examine Mr. Phillips before he was transported to jail for booking. [Filing No. 55-1 at 131-32.]

**D. Mr. Phillips' Charges**

Mr. Phillips was charged with resisting law enforcement and public intoxication. [Filing No. 63-4 at 6.] His charges were subsequently dropped, however, after Detective Wilkerson failed to appear at trial. [Filing No. 55-1 at 81-82.]

As will be discussed below, the parties' version of events reveal that there are material facts in dispute, which will bear significantly on the Court's determination of the instant motion.

---

[1] According to Detective Wilkerson, a brachial plexus stun is a pain compliance technique applied to an individual by "using [the] forearm, the meat of [the] forearm, [or the wrist]," or by "applying pressure to the [brachial] artery . . . ." [Filing No. 55-1 at 111-12.]

6

## III.
### DISCUSSION

Mr. Phillips asserts Fourth Amendment claims of excessive force, false arrest and imprisonment, and malicious prosecution against Defendant Wilkerson, and a municipal liability claim against the City of Indianapolis. [Filing No. 30.] Defendants move for summary judgment on all of Mr. Phillips' claims, arguing that Defendants did not violate Mr. Phillips' constitutional rights. Alternatively, they argue that they are entitled to qualified immunity.

Based on the parties' briefs, several issues are quickly resolved. Defendants initially moved for summary judgment on Mr. Phillips' excessive force claim, arguing that Officer Wilkerson did not use excessive force against Mr. Phillips. [Filing No. 61 at 9.] However, in response, Mr. Phillips countered this argument and presented a different version of events. [Filing No. 62 at 12.] Defendants in their reply concede that Mr. Phillips has "raised disputed material facts" and they "withdraw [their] request for summary judgment as to the excessive force claim." [Filing No. 68 at 1.] Thus, summary judgment on Mr. Phillips' excessive force claim is **denied**, and the claim will proceed to trial.

In addition, Defendants moved for summary judgment on Mr. Phillips' municipal liability claim, arguing that the City of Indianapolis cannot be held liable under Section 1983 for any of Mr. Phillips' alleged constitutional deprivations. [Filing No. 61 at 14.] Because Mr. Phillips waived any opposition to this argument by failing to respond to it, the Court grants summary judgment in favor of the City of Indianapolis on this issue. *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). The Court will now proceed with its analysis of Mr. Phillips' remaining constitutional claims for false arrest and imprisonment, and malicious prosecution against Detective Wilkerson.

### A. 42 U.S.C. § 1983

A cause of action may be brought under 42 U.S.C. § 1983 against "[e]very person who, under color of statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To survive summary judgment, a plaintiff claiming a violation of § 1983 must produce evidence that the defendant "caused or participated in [the] constitutional deprivation." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Here, Mr. Phillips raises two constitutional claims against Detective Wilkerson – false arrest and imprisonment, and malicious prosecution. Detective Wilkerson's principal argument in support of his summary judgment motion is that Mr. Phillips' false arrest and imprisonment and malicious prosecution claims must fail because he had probable cause to arrest Mr. Phillips. The absence of probable cause is an essential element of both claims.[2] In addressing whether a constitutional violation occurred, the Court will limit its analysis to discussing whether probable cause exists and will treat Mr. Phillips' false arrest and imprisonment and malicious prosecution claims together as Detective Wilkerson did in his briefing. Further,

---

[2] To prevail on a false arrest claim, Mr. Phillips must show that he was arrested without probable cause. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). "Indiana courts have used the terms 'false arrest' and 'false imprisonment' interchangeably when a plaintiff's claim stems from detention by authorities without probable cause." *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (citations omitted). To prevail on a malicious prosecution claim under § 1983, Mr. Phillips must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty or was subject to some other constitutional deprivation. *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014) (citations omitted). Under Indiana law, "the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id*. (citing *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)).

because the determination of whether a constitutional violation occurred must be made in deciding both the merits arguments and the qualified immunity claim of Detective Wilkerson, the Court will address that issue in the context of the qualified immunity discussion.

### B. Qualified Immunity

A defendant may resist a constitutional claim by asserting that he is entitled to qualified immunity for his actions. "[Q]ualified immunity is *immunity from suit* rather than a mere defense to liability." *Estate of Miller, ex rel. Bertram v. Tobiasz,* 680 F.3d 984, 988 (7th Cir. 2012) (emphasis in original) (citation and quotation marks omitted). It gives "government officials 'the benefit of legal doubts.'" *Rooni v. Biser,* 742 F.3d 737, 743 (7th Cir. 2014) (quoting *Elliott v. Thomas,* 937 F.2d 338, 341 (7th Cir. 1991)); *see Findlay v. Lendermon,* 722 F.3d 895, 899 (7th Cir. 2013) ("Qualified immunity protects public servants from liability for reasonable mistakes made while performing their public duties."). "Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" *Estate of Escobedo v. Martin,* 702 F.3d 388, 404 (7th Cir. 2012) (quoting *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008)). Qualified immunity is generally a question of law for the court to resolve, *Rakovich v. Wade*, 850 F.2d 1180, 1201-02 (7th Cir. 1988), "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). As such, summary judgment sometimes provides a proper posture from which to decide this objective legal question. *Rakovich*, 850 F.2d at 1204-05.

"To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation." *Rooni*, 742 F.3d at 742; *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009) (citing *Phelan v. Vill. of Lyons*, 531 F.3d 484, 487 (7th Cir. 2008)). "In other words, the plaintiff must show not only that [his] constitutional

rights were violated, but that any reasonable official under the circumstances would have realized that [his] rights were being violated." *Easterling v. Pollard,* 528 Fed.Appx. 653, 656–57 (7th Cir. 2013). To defeat a claim of immunity, plaintiff must prove that a constitutional right is clearly established either by showing that (1) "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that (2) the "conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *See Chelios v. Heavener,* 520 F.3d 678, 691 (7th Cir. 2008) (citing *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)).

The assertion of a qualified immunity defense does not alter the standard for summary judgment. "[W]hen a claim of qualified immunity arises as part of a summary judgment motion, the district court should, as in any summary judgment case, look at all of the undisputed evidence in the record, construed in a light most favorable to the non-movant." *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987) (citations omitted). "If the undisputed facts, so read, show that the defendant's conduct, as a matter of law, violated no clearly established legal norms, then the district court must grant the defendant qualified immunity." *Id*. "However, if there are issues of disputed fact upon which the question of immunity turns, or if it is clear that the defendant's conduct did violate clearly established norms, the case must proceed to trial." *Id*.

   1. *Constitutional Violation*[3]

The Court first considers whether a constitutional violation occurred, that is whether Detective Wilkerson lacked probable cause to arrest or prosecute Mr. Phillips. Whether an officer

---

[3] As noted, while this section addresses whether there was a constitutional violation with respect to the first prong under qualified immunity, it also addresses Detective Wilkerson's merits arguments in terms of liability – whether Detective Wilkerson is liable to Mr. Phillips for arresting or prosecuting him without probable cause.

10

has probable cause to arrest depends on the requirements of the applicable state criminal law. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006); *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001). Detective Wilkerson argues that he had probable cause to arrest Mr. Phillips for resisting arrest pursuant Ind. Code § 35-44.1-3-1(a) and for public intoxication pursuant Ind. Code § 7.1-5-1-3(a). [Filing No. 61 at 4; Filing No. 61 at 7.]

### a. Resisting Arrest

Detective Wilkerson claims that he had probable cause to arrest Mr. Phillips because he thought Mr. Phillips was going to interfere with a law enforcement officer when he was ascending the ramp outside of the entrance of the bar, yelling, and raising his arm while Officer Cook was engaged in a fight with Mr. Phillips' friend. [Filing No. 61 at 5.] He contends that given these circumstances, his actions were reasonable and that he had probable cause to arrest Mr. Phillips. [Filing No. 61 at 5-6.] Detective Wilkerson further claims that he had probable cause to arrest Mr. Phillips after engaging with him because he thought Mr. Phillips posed a threat to Officer Cook, and he contends that after he "placed his thumb on [Mr. Phillips'] carotid artery," he thought Mr. Phillips tried to turn around to "square up on [him]." [Filing No. 61 at 6.]

In response, Mr. Phillips claims that Detective Wilkerson failed to announce his status as a police officer before engaging with Mr. Phillips, and that a jury could determine that Detective Wilkerson had no "objective reasons to conclude" that Mr. Phillips was resisting arrest when Detective Wilkerson initiated the excessive and unwarranted physical contact. [Filing No. 62 at 17-18.]

In reply, Detective Wilkerson argues that he had probable cause to arrest Mr. Phillips before he crossed the street because he believed that Mr. Phillips' actions demonstrated that he

11

intended to unlawfully engage Officer Cook. [Filing No. 68 at 2.] Detective Wilkerson reiterates that he "made a split-second decision to intervene." [Filing No. 68 at 3.]

In Indiana, "[a] person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties; . . . commits resisting law enforcement, a Class A Misdemeanor." Ind. Code § 35-44.1-3-1(a).

Here, the parties have presented different accounts regarding Mr. Phillips' arrest. Detective Wilkerson claims that he saw Mr. Phillips advance toward Officer Cook while he was struggling with Mr. Hernandez, and that Mr. Phillips was yelling and had his arm completely raised. Mr. Phillips, on the other hand, claims that he climbed up the ramp, but stopped at a point where he could not reach the railing that separated him from the entrance, and that he was located a few feet from the physical altercation. He further claims that he was telling Mr. Hernandez to "just go down," and that he had his arm stretched to the side rather than in front of him. Detective Wilkerson contends that when he attempted to restrain Mr. Phillips, he thought Mr. Phillips attempted to "square up on him" when he tried to turn around, which is why he claims he took Mr. Phillips to the ground and placed him under arrest. Conversely, Mr. Phillips claims that when Detective Wilkerson grabbed him from behind, he did not announce himself as a police officer and that when Mr. Phillips attempted to turn around to see who grabbed him, Detective Wilkerson slammed him against the wall, placed him in a choke-hold, and slammed him against the ground.

Because there are material facts in dispute that would affect the determination of whether Detective Wilkerson had probable cause to arrest Mr. Phillips, the Court cannot at the summary judgment stage conclude that no constitutional violation occurred. See *Green,* 826 F.2d at 652.

Indeed, accepting Mr. Phillips[4] version of events – that he was merely standing at the top of the ramp separated by a railing from the entrance and a few feet away from the physical altercation, and that he was not doing anything other than simply telling his friend to stop fighting the officer – the facts do not provide Detective Wilkerson probable cause to arrest Mr. Phillips for resisting arrest. In any event, a reasonable jury could conclude that Detective Wilkerson violated Mr. Phillips' constitutional rights.

### b. Public Intoxication

Detective Wilkerson argues that if he believed that Mr. Phillips was intoxicated and engaged in one of the activities under Ind. Code § 7.1-5-1-3(a), then he had probable cause to arrest Mr. Phillips. [Filing No. 61 at 7.] He claims that he smelled alcohol on Mr. Phillips and noticed he had bloodshot, glassy eyes and that Mr. Phillips admits that he took two shots of Fireball whiskey earlier in the night and consumed two beers immediately before the incident. [Filing No. 61 at 8.] Detective Wilkerson argues that the totality of the circumstances demonstrate that a

---

[4] There are several instances in Detective Wilkerson's opening and reply briefs where he mistakenly states that the facts must be taken from his viewpoint. For instance, in his opening brief, Officer Wilkerson explains that "[e]ven if he was mistaken about [Mr. Phillips'] intent in yelling while approaching another officer . . . with his arm outstretched, the events must be examined from Detective Wilkerson's point of view." [Filing No. 61 at 6.] Later in the opening brief, he states that "[a]lthough [Mr.] Phillips claims he meant no harm to Officer Cook, it is Detective Wilkerson's observations that matter." [Filing No. 61 at 12.] In his reply brief, Detective Wilkerson states that "courts must examine all the circumstances from the officer's viewpoint," [Filing No. 68 at 1], and cites to *Thayer*, 705 F.3d at 246, which does not stand for that proposition. Again in his reply brief, Detective Wilkerson states "[w]hen observed from Detective Wilkerson's point of view, the undisputed facts show that probable cause existed before [Detective] Wilkerson ever crossed the street to the scene of the arrest." [Filing No. 68 at 2.] Lastly, Detective Wilkerson states in his reply brief that "[l]ooking at the totality of the circumstances from the officer's point of view, as the law requires, it was reasonable for Detective Wilkerson to conclude that [Mr.] Phillips intended to join the fracas." [Filing No. 68 at 2.] The standard at summary judgment, as indicated above, is that the undisputed facts and disputed evidence must be viewed in the light most favorable to Mr. Phillips, the nonmoving party. *See Reeves*, 530 U.S. at 150.

reasonable officer would "conclude a crime was being, had been, or was about to be committed." [Filing No. 61 at 8.]

In response, Mr. Phillips argues that Detective Wilkerson had no basis for concluding that Mr. Phillips was impaired. [Filing No. 62 at 19.] He contends that he denied being intoxicated, that Detective Wilkerson never asked him how much he had to drink, that Detective Wilkerson never administered a sobriety test, and that Detective Wilkerson does not claim that Mr. Phillips showed any signs of being impaired. [Filing No. 62 at 19.] Moreover, he argues that the odor of alcohol on him is not enough for Detective Wilkerson to arrest him for public intoxication. [Filing No. 62 at 20.] Lastly, Mr. Phillips claims that Detective Wilkerson initiated physical contact against him when he was doing nothing more than encouraging his friend to stop wrestling with the police officer. [Filing No. 62 at 20.]

In reply, Detective Wilkerson reiterates that he had probable cause to arrest Mr. Phillips for public intoxication. [Filing No. 68 at 2.]

In Indiana, "it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication caused by the person's use of alcohol . . . if the person: (1) endangers the person's life; (2) endangers the life of another person; (3) breaches the peace or is in imminent danger of breaching the peace; or (4) harasses, annoys, or alarms another person." Ind. Code § 7.1-5-1-3(a).

Nothing in the record explains under which subsection of Ind. Code § 7.1-5-1-3(a) Mr. Phillips was charged. The charging information simply recites the entire language of that part of the statute. [Filing No. 63-2 at 13.] Detective Wilkerson's Affidavit states that he initially had probable cause to arrest Mr. Phillips for Resisting Law Enforcement and that after he handcuffed Mr. Phillips, he "observed an odor of alcohol and glassy, bloodshot eyes, giving [him] probable

cause to arrest [Mr. Phillips] for public intoxication." [Filing No. 55-3 at 2.] However, as noted above, there are disputed facts regarding whether Mr. Phillips was attempting to interfere with law enforcement activity, and therefore, whether Detective Wilkerson had probable cause to arrest Mr. Phillips. Moreover, while Detective Wilkerson claims that Mr. Phillips was intoxicated, Mr. Phillips claims that he was not and that Detective Wilkerson did not administer a sobriety test.

Once again, the material facts are in dispute. Thus, contrary to Detective Wilkerson's argument, the Court cannot determine at this stage of the litigation that a constitutional violation did not occur.

   2. *Right Clearly Established - Arguable Probable Cause*

When the constitutionality of an action depends on the existence of probable cause, the officer must have had "arguable probable cause" for qualified immunity to attach. *Bruce v. Guernsey*, 777 F.3d 872, 878 (7th Cir. 2015) (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). "Thus, even when an officer lacks probable cause, he is still entitled to qualified immunity when a reasonable officer "could have reasonably believed that probable cause existed in light of well-established law." *Bruce*, 777 F.3d at 878–79 (citing *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)). In this context, qualified immunity provides shelter for officers who have "arguable probable cause" to arrest—i.e., those officers that reasonably but mistakenly believe they have probable cause. *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013).

Though they may appear to be the same, the probable-cause and arguable-probable-cause inquiries are different. *Id*. (citing *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 880 (7th Cir. 2012)). A search, seizure, or arrest without probable cause is a violation of a constitutional right, whereas a search, seizure, or arrest without arguable probable cause is a violation of a "clearly established" constitutional right. *Gutierrez*, 722 F.3d at 1008 (citing *Hunter*, 502 U.S. at 227;

*McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012)). Arguable probable cause exists when a reasonable officer "in the same circumstances and . . . possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (quoting *Humphrey*, 148 F.3d at 725).

Detective Wilkerson does not provide an analysis of arguable probable cause in his opening brief. [*See* Filing No. 61 at 13.]

In his response brief, Mr. Phillips argues that Detective Wilkerson lacked arguable probable cause to arrest him, and that there are factual disputes that preclude the Court from granting Detective Wilkerson qualified immunity in this case. [Filing No. 62 at 21-22.]

In reply, Detective Wilkerson for the first time argues in passing that even if he did not have probable cause, he still had arguable probable cause, but he fails to develop any analysis of this argument. [Filing No. 68 at 3.]

Detective Wilkerson fails to provide any type of analysis regarding whether he had arguable probable cause to arrest Mr. Phillips. Rather, in his opening brief, Officer Wilkerson focuses solely on the fact that he should be granted qualified immunity on the excessive force claim, although he later concedes in his reply that because there are material facts in dispute, he no longer pursues summary judgment on that claim. Moreover, for the first time in his reply, Detective Wilkerson makes an undeveloped argument that even if he did not have probable cause, he still had arguable probable cause. Because he fails to develop this argument in a meaningful way, Mr. Phillips has waived it. *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

16

Even if Detective Wilkerson had properly raised the issue of arguable probable cause, however, as discussed in great detail above, material facts in dispute exist regarding whether Mr. Phillips was attempting to physically intervene in the fight between Officer Cook and Mr. Hernandez, and whether Mr. Phillips was intoxicated. Detective Wilkerson is under the mistaken belief that just because his version of events supports a finding that he reasonably but mistakenly believed that he had probable cause to arrest Mr. Phillips – that "the totality of the circumstances show a loud, late, alcohol-fueled scene in which an officer was physically engaged," [Filing No. 68 at 3] – he is entitled to qualified immunity. He misapprehends the standard for summary judgment. *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) ("[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them"); *Green*, 826 F.2d at 652 ("[A] court considering a motion for summary judgment based on qualified immunity has before it a pure question of law: whether, based on all the undisputed facts, the defendant's conduct violated any clearly established constitutional or statutory right. The court need not (and should not) resolve any disputed questions of material fact."). Thus, because there are material facts in dispute that would affect the determination of whether Detective Wilkerson had arguable probable cause to arrest Mr. Phillips, Detective Wilkerson is not entitled to qualified immunity as a matter of law.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' Motion for Summary Judgment, [Filing No. 53], to the extent that it finds that the City of Indianapolis cannot be held liable under Section 1983 for Mr. Phillips' alleged constitutional deprivations. The Court **DENIES IN PART** Defendants' Motion for Summary Judgment, [Filing No. 53], to the extent

that Mr. Phillips' claims of excessive force, false arrest and imprisonment, and malicious prosecution shall proceed against Detective Wilkerson. No partial final judgment shall enter at this time.

Date: August 10, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Amanda J. Dinges
OFFICE OF CORPORATION
COUNSEL amanda.dinges@indy.gov

Adriana Katzen
BLEEKE DILLON CRANDALL, PC
adriana@bleekedilloncrandall.com

David T. Vlink
FILLENWARTH DENNERLINE GROTH & TOWE LLP
dvlink@fdgtlaborlaw.com

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

Ameen R. Najjar
OFFICE OF CORPORATION COUNSEL
Ameen.Najjar@indy.gov

Benjamin J. Church
OFFICE OF CORPORATION COUNSEL
Benjamin.Church@indy.gov

Pamela G. Schneeman
OFFICE OF CORPORATION COUNSEL
pamela.schneeman@indy.gov